UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| KNOXVILLE TVA EMPLOYEES CREDIT UNION, | ) ) ) | |
| *Plaintiff/Appellee*, | ) ) | |
| v. | ) ) | Bankr. Adv. Pro. No. 16-3036 |
| | ) | Appeal / Case No. 3:18-cv-27 |
| BRETT W. HOUGHTON, | ) ) | Judge Reeves |
| *Defendant/Appellant*. | ) ) | |
| | ) | |
| IN RE: | ) | |
| BRETT W. HOUGHTON, | ) | Bankr. Case. No. 3:16-bk-31934 |
| | ) | Chapter 7 |
| *Debtor*. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Tennessee. Brett W. Houghton appeals the Bankruptcy Court's memorandum opinion and order, entered on December 13, 2017, granting the Knoxville TVA Employees Credit Union summary judgment against Houghton on a claim of nondischargeability under 11 U.S.C. § 523(a)(2)(A). Houghton also appeals the Bankruptcy Court's January 10, 2018 order awarding the Credit Union a nondischargeable judgment against Houghton in the amount of $74,474.02, in addition to $13,451.33 in attorney's fees and expenses. For the reasons stated below, the Court affirms the Bankruptcy Court's opinion and orders.

1

## I.  BACKGROUND

This case began on June 24, 2016, when Brett Houghton filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. He says that this filing was precipitated by the failure of his boat dealership, Great Wakes Boating, Inc. ("GW"), which he co-owned with his wife. Houghton listed the Knoxville TVA Employees Credit Union ("the Credit Union") as one of his personal creditors.

Approximately 18 months earlier, on November 7, 2014, the Credit Union had issued Houghton a personal loan in the amount of $82,177.38 to purchase a 2011 Malibu 247 LV Wakesetter ("the Boat") from GW, secured by the Boat. Roughly half of the loan was paid into another of Houghton's lending accounts to close out a loan that Houghton had obtained in August 2013 to purchase a different boat. The Credit Union then disbursed $126.56 for the UCC-1 filing fee and paid the remaining balance of $35,244.29 into GW's account. The UCC-1 financing statement contained a minor error in the Boat's serial number. GW subsequently fell on hard times, and one of its inventory floor-plan lenders, Citizens National Bank, repossessed and sold the Boat on August 16, 2016.

On November 30, 2016, the Credit Union filed an adversary proceeding, seeking a judgment against Houghton in the amount of the outstanding loan balance (plus interest, attorney's fees, and costs), and a declaration that the judgment is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and/or 523(a)(2)(B). The Credit Union filed an amended complaint on December 5, 2016, followed by a motion for summary judgment on June 23, 2017. The Bankruptcy Court denied the Credit Union's motion for summary judgment under § 523(a)(2)(B), but granted the motion as to § 523(a)(2)(A). Thereafter, the Bankruptcy Court awarded the Credit Union judgment against Houghton, along with attorney's fees and expenses. This appeal followed.

## II. STANDARD OF REVIEW

On appeal from a bankruptcy court, the district court reviews findings of fact under the clearly erroneous standard, and reviews questions of law *de novo*. *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 557 (6th Cir. 2004). "Because a grant of summary judgment presents a pure question of law, the district court reviews the bankruptcy court's grant of summary judgment *de novo*." *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002). The standards set forth in Federal Rule of Civil Procedure 56 apply in bankruptcy adversary proceedings. *See* Fed. R. Bankr. P. 7056.

As the movant, the Credit Union bears the initial burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016); FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Once the Credit Union has satisfied its initial burden, Houghton must show that a genuine issue of material fact still exists. *Stiles*, 819 F.3d at 847. In doing so, he may not rely solely on the pleadings or mere allegations, but must instead set forth specific facts in the record that create a genuine issue for trial. *Id.*; *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). While weighing the evidence in the light most favorable to Houghton, the Court must decide "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

In this case, the Bankruptcy Court concluded that a rational factfinder could not find for Houghton, and thus, the Credit Union was entitled to judgment as a matter of law on its § 523(a)(2)(A) claim. The Court will review this decision *de novo*. The Court has the authority to affirm, modify, or reverse a judgment or order of the Bankruptcy Court and may remand the case to the Bankruptcy Court for further proceedings. Fed. R. Bankr. P. 8013.

## III. DISCUSSION

In its December 13, 2017 memorandum, the Bankruptcy Court found that the Credit Union had satisfied each element of its § 523(a)(2)(A) claim of nondischargeability against Houghton. In order to except a debt from discharge under this provision, a creditor must prove each of the following elements by a preponderance of the evidence:

1. The debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
2. The debtor intended to deceive the creditor;
3. The creditor justifiably relied on the false representation; and
4. The creditor's reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). Exceptions to discharge are to be strictly construed in favor of the debtor. *Id.* at 281.

On appeal, Houghton challenges the Bankruptcy Court's conclusion with respect to the third and fourth elements.[1] As to the third element, Houghton says that the Bankruptcy Court erred in finding that the Credit Union justifiably relied on Houghton's alleged false representations. As to the fourth, Houghton says that the Bankruptcy Court erred when it found that he did not purchase

---

[1] In his appellant brief, Houghton "reaffirms his believe that none of the elements can be satisfied," but he only presents argument as to the third and fourth elements [D. 5, at 6]. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *DJahspora v. City of Jackson, Tennessee*, 2017 WL 3659028, at *1 (6th Cir. Aug. 14, 2017) (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005), *abrogated on other grounds*, *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)). Houghton has thus waived any objection to the Bankruptcy Court's findings as to the first and second elements.

4

the Boat from GW and that the Credit Union did not have a valid lien on the Boat. Houghton says that there are genuine disputes as to these material facts, and thus, the Credit Union was not entitled to summary judgment. The Court will address each argument in turn.

### A. Justifiable Reliance on a False Representation

Whether a creditor justifiably relied on a debtor's false representation depends on "the qualities and characteristics of the particular [creditor], and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. 59, 71 (1995) (quoting Restatement (Second) of Torts, § 540 (1976)). Because "[j]ustifiable reliance is a less demanding standard than reasonable reliance ... [a] creditor may be justified in relying on a representation even if 'he might have ascertained the falsity of the representation had he made an investigation.'" *In re Keane*, 560 B.R. 475, 488 (Bankr. N.D. Ohio 2016) (quoting *Field*, 516 U.S. at 71); *Lamar, Archer & Cofrin, LLP v. Appling*, 2018 WL 2465174, at *9 n.6 (U.S. June 4, 2018). Nevertheless, a creditor cannot claim justifiable reliance "if the misrepresentation should be apparent to a person of the creditor's knowledge and intelligence from a cursory glance." *In re Keane*, 560 B.R. at 489 (citing *Field*, 516 U.S. at 71).

In this case, the Credit Union says that, in deciding to issue the loan, its officer Ben Saul relied on Houghton's representations that (1) GW owned the Boat at the time the loan was made; (2) Houghton intended to purchase the Boat from GW using the loan proceeds; and (3) Houghton was granting the Credit Union a security interest in the Boat. These representations are contained in the Deal Sheet that Houghton provided the Credit Union during the loan process and the executed Loan Agreement and Security Agreement ("the Note"), both of which Houghton signed.[2]

---

[2] For purposes of ruling on this appeal, the Court disregards the loan application and the representations therein because Houghton disputes that he ever saw or signed that document [D. 3-1, at 125, 396-97].

Houghton says that the loan officer could not have relied on a misrepresentation regarding ownership because "it was impossible for [Houghton] to own the Boat when he signed the loan papers because the entire *purpose* of the loan was to buy it." [D. 5, at 10]. But Houghton misconstrues the Credit Union's claim. The Credit Union was well aware that Houghton did not then own the Boat, and that the purpose of the loan was to enable him to purchase it. The alleged misrepresentation was that *GW* owned the Boat, which would mean that GW could then sell it to Houghton, who, in turn, would give the Credit Union a security interest in it. The Deal Sheet indicates that Houghton was both the buyer of the Boat and the representative of the seller, GW, which clearly implies that GW was the owner of the Boat and was authorized to sell it [D. 3-1, at 15].[3] The Credit Union had no reason to doubt the veracity of this representation. Since 2009, Houghton had opened eleven other lending accounts with the Credit Union (all of which were in good standing), and had served as GW's representative in the Credit Union's indirect lending program. Under the circumstances and in light of the parties' past dealings, the Credit Union was justified in relying on Houghton's tacit representations regarding GW's ownership of the Boat.

Of course, GW did not actually own the Boat at the time that the Note was executed, and it is undisputed that Houghton did not convey this information to Saul during the loan application process [*Id.* at 129, 382]. In his deposition, Houghton says he believed that GW owned the boat at the time that he took out the loan, but this mistaken belief does not make it so [*Id.* at 129]. It is undisputed that GW did not pay for the Boat and receive the Bill of Sale until February 10, 2015, several months after Credit Union issued Houghton the loan was [*Id.* at 168-69, 382].

Even after the sale to GW was finalized, Houghton never transferred ownership of the Boat from GW into his name; nor did he intend to do so [*Id.* at 67, 122, 383]. Houghton says that the

---

[3] Document 3-1 contains the Record on Appeal. All citations to the record in this Memorandum reference the District Court docket.

Credit Union could have done this in his stead, and that "the reliance of the Credit Union is belied by the fact that it took no action to ensure ownership was changed." [D. 5, at 11]. He notes that the Credit Union did not have him sign a Power of Attorney form, which would have enabled it to apply for and obtain a Certificate of Title in Houghton's name with the Credit Union's lien attached [D. 3-1, at 424]. But as the Credit Union points out, boats are not titled property in Tennessee. Tennessee requires boats to be *registered*, but registration alone does not provide proof of ownership or notice of any liens on the property. *See* Tenn. Code Ann. § 69-9-206.

Additionally, the Note expressly states that the borrower promises "[to] use the proceeds of the loan to buy the collateral," and that the borrower is giving the lender a security interest in the property being purchased [D. 3-1, at 16]. Houghton signed the Note, and he agrees that this is what the contract says. But he says that "the parties verbally changed that contract," and that in using part of the loan proceeds to pay off another of Houghton's loan accounts, the Credit Union "thereby caus[ed] the boat not to be paid." [*Id.* at 430]. Houghton's argument is unavailing for two primary reasons.

First, "[e]vidence of a prior or contemporaneous agreement inconsistent with or varying the terms of a written contract is, of course, inadmissible under the parol evidence rule." *In re Ramco-Remodel Am. Corp.*, 536 B.R. 206, 210 (Bankr. W.D. Tenn. 2015) (quoting *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 838 (Tenn. Ct. App. 1980)). Because the Note is facially unambiguous, it must be interpreted as written, and evidence of any oral alteration to the contract may not be considered.

Second, the Deal Sheet indicates that GW was to receive a trade-in as part of the purchase agreement, and thus, $47,500 was credited toward the $80,000 sale price of the Boat [D. 3-1, at 15, 35, 121-22]. In his answer to the Credit Union's amended complaint, Houghton flatly denies

that the loan involved a trade-in [*Id.* at 20]. But in his deposition, Houghton admits that it did [*Id.* at 121-22, 126]. Even resolving Houghton's own contradictions in the light most favorable to him, Houghton still does not dispute that the Credit Union disbursed $35,244.29 of the loan proceeds into GW's account "in payment of the *remaining amount due* on [Houghton's] purchase of the Boat." [*Id.* at 11, 16, 20].

Based on the evidence in the record, the Court finds that the Credit Union was justified in relying on Houghton's misrepresentations regarding GW's ownership of the Boat, his intent to purchase the Boat, and his intent to grant the Credit Union a security interest in it. Houghton has failed to present any specific evidence that would create a genuine dispute on this element.

### B. Proximate Cause of the Credit Union's Loss

Houghton also challenges the Bankruptcy Court's findings that Houghton never purchased the Boat from GW, and thus, the Credit Union's security interest in it was unenforceable. Houghton says that there are genuine disputes as to these facts, which pertain to the issue of whether the Credit Union's reliance on Houghton's false representations proximately caused the Credit Union's loss. "For purposes of § 523(a)(2)(A), proximate cause may be established by showing the conduct was a substantial factor in the loss, or the loss may be reasonably expected to follow." *In re Keane*, 560 B.R. 475, 489 (Bankr. N.D. Ohio 2016). This element requires "a direct link between the alleged fraud and the creation of the debt." *In re Copeland*, 291 B.R. 740, 767 (Bankr. E.D. Tenn. 2003) (quoting *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 n. 7 (1st Cir. 2001)).

On appeal, Houghton attempts to say that the existence of a sales contract and the fact that he paid money for the Boat is sufficient to prove ownership, or, at a minimum, an "equitable ownership interest" [D. 5, at 12]. He contends that this interest gave him the legal power to transfer a security interest in the Boat to the Credit Union, and that, even if he had commingled or disposed

of the collateral under Tennessee Code § 47-9-205(a), the Credit Union's security interest would not have been invalidated. Finally, Houghton says that the Credit Union's loss was caused not by Houghton's false representations in the loan process, but by its failure to enforce its superior security interest in the Boat against GW's creditor.

None of these arguments were raised before the Bankruptcy Court, and "[b]arring extraordinary circumstances, a reviewing court does not consider new arguments first raised on appeal." *In re Nicole Gas Prod., Ltd.*, 581 B.R. 843, 852 (B.A.P. 6th Cir. 2018). The purpose of this rule is to ease appellate review, ensure fairness to litigants, and promote judicial economy and the finality of judgments. *Fairlane Car Wash, Inc. v. Knight Enterprises, Inc.*, 396 F. App'x 281, 286 (6th Cir. 2010). The Sixth Circuit has recognized exceptions to this general rule only in the rare case when applying it would produce "a plain miscarriage of justice." *Id.*

In his reply brief, Houghton says that he raised the *issues* of whether certain elements of the Credit Union's case could be satisfied in the Bankruptcy Court proceedings, and thus, he should be able to present any *arguments* related to these issues on appeal [D. 10, at 2-3]. But "simply because an issue was raised below does not mean that all arguments related to that issue are preserved." *In re Mayer*, 451 B.R. 702, 707 (E.D. Mich. 2011). An appellate court is to "review the case presented to the trial court rather than a better case fashioned after the trial court's order." *Chao v. Hall Holding Co.*, 285 F.3d 415, 427 (6th Cir. 2002) (cleaned up) (citation and internal quotations marks omitted). Houghton had the opportunity to present these arguments to the Bankruptcy Court, but simply failed to do so. The Court finds that no extraordinary circumstances exist in this case to justify considering Houghton's new arguments as to this element of the Credit Union's claim.

However, the Court will address one of Houghton's original arguments that the Bankruptcy Court did not find cause to reach. In his response to the Credit Union's motion for summary judgment, Houghton contends that the Credit Union's loss was caused by its own error in omitting one digit of the Boat's identification number in the UCC-1 financing statement. Yet, even with this error, Citizens National Bank was able to locate the Credit Union's financing statement before it repossessed and sold the Boat [D. 3-1, at 420]. In Tennessee, "[m]inor mistakes in financing statements are not fatal ... so long as they do not frustrate the underlying purpose of the filing requirements in affording notice to creditors of the possible existence of security interests." *In re U.S. Ins. Grp., LLC*, 429 B.R. 903, 912 (E.D. Tenn. 2010) (quoting *In re Snelson*, 330 B.R. 643, 652 (Bankr. E.D. Tenn. 2005)). Because the Credit Union's financing statement was clearly sufficient to put other creditors on notice, the slight error therein was not fatal to the Credit Union's security interest in the Boat, and did not proximately cause its loss.

As to the causation element, the Credit Union submitted evidence (in the form of Saul's affidavit and declaration) that the loan would not have been issued but for Houghton's false representations on which the Credit Union justifiably relied [D. 3-1, at 36-37, 502]. In his declaration, Houghton states that it is his opinion that the Credit Union approved the loan based on the parties' "long relationship," and that Saul's statements to the contrary are "speculation" that "do[] not make sense." [*Id.* at 398]. But Houghton has not pointed to specific evidence in the record to create a genuine dispute as to this issue, and a nonmovant may not survive a motion for summary judgment based on mere allegations such as these. Because a preponderance of the evidence in the record establishes a direct link between Houghton's alleged fraud and the issuance of the loan, the fourth element of the § 523(a)(2)(A) test is satisfied.

Even viewing the evidence in the light most favorable to Houghton and drawing all justifiable inferences in his favor, the Court finds that the Credit Union's reliance on Houghton's false representations was justified and that this reliance was a substantial factor in its loss. Because there is no genuine issue of material fact for trial on the contested elements of the Credit Union's § 523(a)(2)(A) claim—and because a reasonable fact-finder could not find in Houghton's favor—the Credit Union is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Bankruptcy Court did not err when it granted the Knoxville TVA Employee's Credit Union judgment as a matter of law on a claim of nondischargeability under 11 U.S.C. § 523(a)(2)(A), or when it awarded the Credit Union attorney's fees and expenses. Accordingly, Brett Houghton's objections are **OVERRULED**, and the Bankruptcy Court's December 13, 2017 memorandum opinion and order and its January 10, 2018 order are hereby **AFFIRMED**.

**IT IS SO ORDERED.**

**UNITED STATES DISTRICT JUDGE**